UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Kely Y. Arbuckle, *Plaintiff*, v. James D Wilcox, *et al.*, *Defendants*. | No. 20 CV 1419<br><br>Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Kely Arbuckle, a former Illinois state prisoner, brings this case against several employees of Stateville Correctional Center based on alleged violations of his First and Eighth Amendment rights and state law. Defendants William Brown, Christoper Garrett, Terrell Pork, and James Wilcock,[1] move for summary judgment.[2] [Dkt. 115, 121.] Arbuckle failed to file the required Local Rule 56.1 responses to Defendants' statements of material fact, and as a result, Defendants' version of the facts is deemed admitted. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012). Given that posture, Defendants are entitled to summary judgment except for on one claim against Brown.

---

[1] Wilcock's name is misspelled in the case caption.
[2] Arbuckle's operative complaint also names Akerria Daniels, Officer Jones, and a John Doe as Defendants. [Dkt. 28.] Summonses for Daniels and Jones were returned unexecuted in 2021 [Dkt. 37, 51], and no further attempt at service appears to have been made. The Court notifies Arbuckle that it plans to dismiss his claims against Daniels and Jones without prejudice *sua sponte* for failure to effect timely service pursuant to Federal Rule of Civil Procedure 4(m). The John Doe was identified as Brian Givens, and in 2021 he waived service and entered an appearance [Dkt. 43, 45], but otherwise seems not to have been involved in this case. The Court notifies Arbuckle that it plans to dismiss his claims against Givens without prejudice *sua sponte* for failure to prosecute. *See O'Rourke Bros. Inc. v. Nesbitt Burns, Inc.*, 201 F.3d 948, 952 (7th Cir. 2000). Unless Arbuckle shows good cause why the Court should not, the Court will dismiss these Defendants on November 21, 2023.

1

I. **Background**

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Reed v. Brex, Inc.*, 8 F.4th 569, 578 (7th Cir. 2021) (quotation omitted). A party opposing summary judgment "must go beyond the pleadings … to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in his favor." *Burton v. Kohn L. Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (cleaned up). It is not enough that evidence exists somewhere in the record; a party must respond to his opponent's statement of material facts, "cit[ing] specific evidentiary material that controverts [an asserted] fact and concisely explain how the cited material controverts the asserted fact." Loc. R. 56.1(e)(3). While Arbuckle filed opposition briefs [Dkt. 127, 128], he failed to file the required Local Rule 56.1 responses or otherwise attempt to rebut Defendants' evidence [*see* Dkt. 130 at 1–3; Dkt. 132 at 2–3]. As a result, Defendants' version of the facts is deemed admitted. *Keeton*, 667 F.3d at 884.

A. **Arbuckle's Allegations**

The Court discussed Arbuckle's factual allegations at length in its opinion ruling on the motion to dismiss his Second Amended Complaint. *Arbuckle v. Wilcox*, 2021 WL 5321552 (N.D. Ill. Nov. 16, 2021). [Dkt. 28.] It briefly recaps the allegations relating to Arbuckle's surviving claims: First Amendment retaliation, cruel and

unusual punishment, and failure to intervene under 42 U.S.C. § 1983, and willful and wanton conduct in violation of Illinois law. *See Arbuckle*, 2021 WL 5321552, at *13.³

In September 2017, when Arbuckle was incarcerated at Stateville, he got into a fight with another inmate, Philip Hartsfield, and was charged with four offenses. *Id.* at *1. Arbuckle says that the fight was purely personal, based on Hartsfield's trash talk. *Id.* Wilcock, a corrections officer, interrogated Arbuckle about the incident; he thought the fight was gang related and threatened Arbuckle with additional charges if Arbuckle refused to admit the fight was gang related. *Id.* Arbuckle pleaded guilty to two of the charges and was sentenced to a month in segregated housing. *Id.* at *2. On the day that he was supposed to be released, Arbuckle was charged with more offenses; several days later, he was convicted on one count and sentenced to three additional months in segregation. *Id.*

Arbuckle filed a grievance about his second conviction, and the grievance officer recommended that the conviction be expunged. *Id.* at *2–3. Arbuckle showed the recommendation to Garrett and another correctional officer and told them that he should no longer be in segregation; they said they would notify Sergeant Pork and Lieutenant Brown. *Id.* at *3. Pork and Brown told another inmate that they knew about the expungement, that it was an issue between Arbuckle and internal affairs, and that they had been instructed not to release him. *Id.* When Arbuckle learned

---

³       The Court dismissed several of Arbuckle's claims with prejudice and several others without prejudice, *Arbuckle*, 2021 WL 5321552, at *13. Arbuckle did not file a third amended complaint by the deadline the Court set. [*See* Dkt. 103.]

3

about this, he had a severe panic attack. *Id.* Garrett ignored his request for help, and Pork and Brown made fun of his panic attack. *Id.*

### B. Defendants' Assertions

Defendants tell a different story, and for purposes of summary judgment, their account of the facts is considered undisputed. *Keeton*, 667 F.3d at 884. On September 25, 2017, Arbuckle assaulted Hartsfield on the instruction of Arbuckle's gang, the Latin Kings. [Dkt. 122 ¶¶ 7–9.] A sergeant charged him in an offender disciplinary report ("ODR") with four offenses ("ODR #1"). [*Id.* ¶ 10.] ODR #1 was adjudicated on October 3, 2017, and Arbuckle was sentenced to one month in segregation. [Dkt. 116 ¶¶ 8–9; Dkt. 122 ¶ 12.] Wilcock was not involved with ODR #1. [Dkt. 122 ¶ 13.]

Separately from the resolution of ODR #1, the prison's intelligence unit was notified about Arbuckle's fight with Hartsfield, and Wilcock interviewed Arbuckle on September 25, 2017 in his capacity as a member of the intelligence unit. [*Id.* ¶¶ 10–11.] Wilcock has never attempted to coerce Arbuckle or anyone else to make a false statement during an intelligence unit review. [*Id.* ¶¶ 53.] The intelligence unit continued to investigate, and on October 24, 2017, it found, based on evidence gathered after the day of the fight, that additional and distinct charges were warranted. [*Id.* ¶¶ 14–18, 23–24, 26.] On October 25, 2017, Wilcock authored a disciplinary ticket ("ODR #2") charging Arbuckle with assault and gang-related charges. [Dkt. 116 ¶ 10; Dkt. 122 ¶¶ 19, 22.] Arbuckle was found guilty after an October 31, 2017 hearing at which he declined to call witnesses and was sentenced to three additional months in segregation. [Dkt. 116 ¶ 13; Dkt. 122 ¶¶ 27–28.] No

4

Defendant sat on the committee that adjudicated ODR #2. [Dkt. 122 ¶ 27.] Wilcock's only role in this process was writing the disciplinary ticket. [*Id.* ¶¶ 19–21.]

Between October 25, 2017 and December 1, 2017, Brown called Wilcock and other prison staff to express his concern that Arbuckle's three-month sentence on ODR #2 constituted "double jeopardy" within the prison's disciplinary system; Brown attempted to get Arbuckle released from segregation. [Dkt. 116 ¶¶ 11–12.] Arbuckle filed a grievance on December 1, 2017, challenging ODR #2 as double jeopardy. [*Id.* ¶ 15; Dkt. 122 ¶ 30.] On December 13, 2017, a grievance officer recommended ODR #2 be expunged, but such a recommendation does not result in a conviction's immediate expungement; other prison personnel must act. [Dkt. 116 ¶ 18; Dkt. 122 ¶¶ 31–32.] The chief administrative officer concurred with the grievance officer's recommendation on December 20, 2017, and Arbuckle received a copy of both responses on December 21, 2017. [Dkt. 116 ¶¶ 19–20.] Brown told him that internal affairs had decided he needed to remain in segregation. [*Id.* ¶ 40.]

Before an inmate is released from segregation, the placement office must assign him a cell in general population. [Dkt. 122 ¶ 33.] Usually, the placement office would make a call or send an email directing that an inmate be released into general population before that inmate was released from segregation, even if another prison official or body found that the inmate should be released. [Dkt. 116 ¶ 6; Dkt. 122 ¶ 34.] Wilcock was not responsible for ensuring that inmates were properly released from segregation; did not instruct Brown, Garrett, or Pork to keep Arbuckle in segregation; and did not have the authority to order an inmate to be kept in

5

segregation. [*Id.* ¶¶ 35–39.] Likewise, Brown lacked authority to have inmates unilaterally released from segregation. [Dkt. 116 ¶¶ 7, 23–25, 38.] Pork does not recall anyone talking to him about Arbuckle's segregation or complaining that Wilcock made sure Arbuckle stayed in segregation. [Dkt. 122 ¶¶ 41–42.] Nor was Pork aware of Arbuckle's grievance related to his disciplinary action, that Arbuckle was serving time in segregation beyond what was authorized by the disciplinary committee, or that any disciplinary violation had been expunged. [*Id.* ¶¶ 48–50.]

On December 22, 2017, Arbuckle had a panic attack and lost consciousness, the first such attack he had ever experienced. [Dkt. 116 ¶ 21.] He allegedly requested a crisis team and passed out, but he was not otherwise injured from the panic attack. [*Id.* ¶¶ 22, 31, 41; Dkt. 122 ¶ 61.] Arbuckle had never been diagnosed with panic attacks, and during at least 12 appointments with medical or mental health professionals between October 25, 2017 and December 23, 2017, he did not state that he was feeling excessive anxiety or that he feared he may suffer a panic attack. [Dkt. 122 ¶¶ 29, 57, 59; *see also* Dkt. 116 ¶ 27.] Brown, Garrett, and Pork were unaware of the panic attack. [Dkt. 116 ¶¶ 41–42; Dkt. 122 ¶¶ 43–44.] When Brown saw Arbuckle on December 22, Arbuckle had already awoken after losing consciousness. [Dkt. 116 ¶ 42.]

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). To avoid the entry of summary judgment, the nonmovant "may not rest upon mere allegations in the pleadings …; he must go beyond the pleadings and support his contentions with proper … evidence. It is well-settled that speculation may not be used to manufacture a genuine issue of fact." *Weaver v. Champion Petfoods USA, Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (cleaned up).

### III. Analysis

The claims at issue here are First Amendment retaliation against Wilcock; Eighth Amendment and failure to intervene claims against Brown, Garrett, and Pork; and willful and wanton conduct against all four Defendants. *Arbuckle*, 2021 WL 5321552, at *13. Arbuckle's failure to file a Local Rule 56.1 statement disputing Defendants' version of the facts means that the Court has deemed Defendants' facts admitted. *Keeton*, 667 F.3d at 884. Arbuckle must dispute Defendants' evidence with his own evidence, not mere allegations, *Weaver*, 3 F.4th at 934, so his discussion of the adequacy of his allegations is beside the point. [*See* Dkt. 127, 128.] The question is whether, based on their version of the facts, Defendants are entitled to judgment as a matter of law. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006). As explained below, with the exception of the willful and wanton claim against Brown, Defendants are entitled to summary judgment.

### A. First Amendment Retaliation

The Court begins with Arbuckle's claim for First Amendment retaliation. The Court previously dismissed this claim with respect to all Defendants besides Wilcock.

7

*Arbuckle*, 2021 WL 5321552, at *4–6. To prevail, Arbuckle must prove "that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in [Wilcock's] decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (cleaned up). Further, Arbuckle must prove that Wilcock was personally involved with the deprivation. *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023). The Court decides this claim on the third element: Wilcock was not motivated by any First Amendment activity to take retaliatory action against Arbuckle.

The Court assumes without deciding that Arbuckle could prove he engaged in protected First Amendment activity—stating that the fight with Hartsfield was personal, not gang related—and that the ODR #2 charges could constitute a deprivation likely to deter future First Amendment activity. *See Bridges*, 557 F.3d at 546. [Dkt. 128 at 2–3; *see also* Dkt. 123 at 6–11 (arguing that Arbuckle fails on the first two elements).] Even so, Arbuckle cannot satisfy the third element because the undisputed facts show that Wilcock never attempted to coerce Arbuckle to say the fight was gang related and Wilcock recommended additional charges based on evidence gathered after the fight, not Arbuckle's refusal to admit the fight was gang related. [Dkt. 122 ¶¶ 15, 17–18, 22–26, 53–54; *see* Dkt. 123 at 12.]

8

In his response brief, Arbuckle largely relies on allegations and discussion of other cases, not evidence that is in the record. [Dkt. 128 at 4–5.][4] But Arbuckle's burden at summary judgment is to point to evidence in the record that would permit a reasonable jury to find in his favor. *Weaver*, 3 F.4th at 934. Even if his analogies to other instances of official misconduct are persuasive, a jury needs an evidentiary foundation for finding that Wilcock retaliated against Arbuckle. Arbuckle has failed to provide such a foundation, so Wilcock is entitled to summary judgment on the retaliation claim.

### B.  Deliberate Indifference

Next up are Arbuckle's claims that Brown, Garrett, and Pork subjected him to cruel and unusual punishment in violation of the Eighth Amendment. *Arbuckle*, 2021 WL 5321552, at *7–8. The Eighth Amendment's prohibition on cruel and unusual punishment bars prison officials from being deliberately indifferent to prisoners' serious medical needs. *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). To prevail on this claim, Arbuckle "must point to evidence that (1) [he] suffered an objectively serious medical condition; (2) the defendant in question knew of the condition and was deliberately indifferent to treating [him]; and (3) this deliberate indifference injured [him]." *Id.* (citations omitted).

Arbuckle's Eighth Amendment claim fails on multiple fronts. Even assuming his panic attack could be considered a serious medical condition, the undisputed facts

---

[4]  The only evidence Arbuckle cites, an affidavit from a fellow inmate, refers to Brown's conduct, not Wilcock's. [Dkt. 128 at 4.] Even if Defendants' version of events were not deemed admitted, this affidavit would not help Arbuckle establish a factual dispute as to Wilcock.

9

establish that no Defendant knew of his condition. Arbuckle had not been diagnosed with panic attacks or complained of anxiety before he suffered a panic attack on December 22, 2017, and Brown, Garrett, and Pork did not know he suffered a panic attack. [Dkt. 116 ¶¶ 27, 41–42; Dkt. 122 ¶¶ 29, 43–44, 57, 59.] This is fatal to his claim because a defendant cannot be deliberately indifferent unless he actually knows of the risk to the inmate's health. *Stockton*, 44 F.4th at 614. Further, it is undisputed that Arbuckle suffered no injury from his panic attack [Dkt. 116 ¶ 22; Dkt. 122 ¶ 61], so even if Defendants had been deliberately indifferent to a serious medical condition, his claim would fail. *See Stockton*, 44 F.4th at 614. Arbuckle speculates that witnesses who have not been deposed might back up his version of events [Dkt. 127 at 3], but no testimony from these witnesses appears in the record, and Arbuckle may not rely on speculation or allegations to survive summary judgment. *Weaver*, 3 F.4th at 934. Brown, Garrett, and Pork and entitled to summary judgment on this claim.

### C. Failure to Intervene

A government official is also liable under 42 U.S.C. § 1983 if he fails to intervene to stop another official's constitutional violation if he "know[s] that a [person's] rights are being infringed, and … ha[s] a realistic opportunity to intervene." *Doxtator v. O'Brien*, 39 F.4th 852, 864–65 (7th Cir. 2022) (cleaned up).[5] The failure of Arbuckle's substantive First and Eighth Amendment claims also dooms his failure to intervene claim. [*See* Dkt. 123 at 21; *see also* Dkt. 117 at 7.] Such a claim is based on

---

[5] Brown argues that failure to intervene claims are not cognizable because § 1983 provides only for direct liability, not derivative liability, but he acknowledges that the Seventh Circuit recognizes failure to intervene claims. [Dkt. 117 at 5–7.] The Court construes this argument as an attempt to preserve this claim for appeal and discusses it no further.

10

the failure to prevent a constitutional violation. *Doxtator*, 39 F.4th at 864–65. Therefore, "[i]n order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (citation omitted). As discussed, the undisputed facts establish that Arbuckle's First and Eighth Amendment claims fail. Thus, Defendants are entitled to summary judgment on Arbuckle's failure to intervene claim.

### D. Willful and Wanton Conduct

Last, the Court turns to Arbuckle's Illinois law claim for willful and wanton conduct against all four Defendants. *Arbuckle*, 2021 WL 5321552, at *10–11. As the Court previously explained, this claim attempts to impose liability against Wilcock for conduct that mirrors Arbuckle's retaliation claim and against Brown, Garrett, and Pork for conduct that matches Arbuckle's deliberate indifference claim. *Id.* These claims rise and fall with his federal claims, which fail. *Id.* [Dkt. 123 at 22–23.] Garrett, Pork, and Wilcock are therefore entitled to summary judgment.

Brown would also have been entitled to summary judgment on this claim for the same reasons, but he failed to move for summary judgment on this claim or argue that he is entitled to summary judgment in his opening brief. [Dkt. 115, 117.] He also failed to incorporate the other Defendants' arguments in his brief, which he knew he could do. [*See* Dkt. 117 at 7 (incorporating the other Defendants' arguments about failure to intervene claims).] Brown apparently believed that the willful and wanton conduct claim against him was no longer live. [Dkt. 115 ¶ 1 (indicating that the Second Amended Complaint asserted claims against Brown for "for alleged violation of the Eighth Amendment for deliberate indifference to a serious medical need, and

11

a claim of 'failure to intervene' in an alleged First Amendment violation by Defendant James Wilcock"), ¶ 2 ("No other claims against Defendant Brown are pending.").] But the Court's previous opinion and docket entry made clear that this claim remained pending against Brown. *Arbuckle*, 2021 WL 5321552, at *11 ("The willful and wanton conduct count … can proceed against … Brown ….), *13 ("The following claims survive …: … Count 9 (Negligent and Willful/Wanton Conduct) against … Brown …."). [Dkt. 68 (same).] Brown has waived his right to summary judgment on this claim twice over, by disclaiming that he was seeking summary judgment on it in his motion [Dkt. 115 ¶¶ 1–2], and by failing to argue the issue in his opening brief. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003).

Brown's argument that he is entitled to summary judgment because Arbuckle failed to exhaust his administrative remedies cannot save him. [Dkt. 117 at 2–4.][6] While the undisputed facts contained within Brown's Local Rule 56.1 statement establish that Arbuckle failed to exhaust his available prison grievances with respect to his claims against Brown, the exhaustion requirement applies only to federal law claims, not state law claims. *See* 42 U.S.C. § 1997e(a); *Hacker v. Dart*, 62 F.4th 1073,

---

[6] Garrett, Pork, and Wilcock move to adopt Brown's arguments regarding the failure to exhaust administrative remedies. [Dkt. 119.] The Court grants the motion, but it notes that nothing in Brown's filings could help establish that Garrett, Pork, or Wilcock are entitled to summary judgment on exhaustion grounds. Neither Brown's memorandum of law nor his Local Rule 56.1 statement contains factual assertions or legal argument relating to exhaustion with respect to any Defendant besides himself. [*See* Dkt. 116, 117.] The absence of evidence and argument is fatal because a summary judgment movant bears the burden to show that he is entitled to summary judgment. *See Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). With nothing to incorporate from Brown and no support in their own filings [*see* Dkt. 122, 123 (no mention of exhaustion)], Garrett, Pork, and Wilcock have failed to show that they are entitled to summary judgment on this basis. Of course, this makes no difference to the ultimate result because they are entitled to summary judgment on other grounds.

12

1078 (7th Cir. 2023) ("The Prison Litigation Reform Act bars prisoners from bringing *federal* claims challenging prison conditions ... until such administrative remedies as are available are exhausted." (cleaned up) (emphasis added)).

Arbuckle's failure to comply with Local Rule 56.1 means that Brown would have been entitled to summary judgment on the state law claim if he had moved for it, but failing to include this claim in his motion or opening brief means it survives. *See Patel v. DeJoy*, 2022 WL 17850358, at *10 (N.D. Ill. Dec. 22, 2022) (finding that where a defendant did not move for summary judgment on a claim, it survived).[7]

## IV.   Conclusion

Garrett, Pork, and Wilcock's motion for summary judgment [Dkt. 121] is granted. All claims against them are terminated, and they are dismissed as Defendants. Brown's motion for summary judgment [Dkt. 115] is granted as to Arbuckle's Eighth Amendment and failure to intervene claims. The only surviving claim is Count Nine, Arbuckle's willful and wanton conduct claim and that claim remains only as to Defendant Brown.

Enter: 20-cv-1419
Date: November 14, 2023

_____
Lindsay C. Jenkins
United States District Judge

---

[7]   While *Patel* can be read as denying summary judgment because there was overlap between the elements of the two claims, 2022 WL 17850358, at *10, the defendant's motion for summary judgment did not limit the scope, as Brown's motion does, *see Patel v. DeJoy*, 19-cv-3331, ECF No. 56.

13